UNITED STATES DISTRICT COURT

                     EASTERN DISTRICT OF LOUISIANA


DERRICK EDWARDS                                CIVIL ACTION

VERSUS                                         NO: 11-1900

PERMOBIL,INC., *ET AL*.                        SECTION: R


                           **ORDER AND REASONS**

   Defendants National Seating & Mobility Inc. ("National Seating"), Columbia Casualty Company ("Columbia Casualty"), Praxair, Inc. ("Praxair"), and Old Republic Insurance Company ("Old Republic") move for summary judgment.[1] For the following reasons, defendants' motions are GRANTED.[2]

---

[1] R. Docs. 91, 92, 94.

[2] Defendant Permobil Inc. has also filed an opposition to defendants motions for summary judgment. R. Doc. 109. National Seating, Columbia Casualty and Praxair have moved to strike Permobil's opposition because Permobil lacks standing to file an opposition to its co-defendants' motions. R. Docs. 154, 155, 161. While some courts have precluded co-defendants without crossclaims from filing oppositions to a co-defendant's motion for summary judgment, *see, e.g.*, *Dorvin v. 3901 Ridgelake Drive, LLC*, No. 11-00696, 2012 WL 1057599, at *4 (E.D La. Mar. 28, 2012) (citing cases holding that co-defendants do not have standing to file oppositions); *Thurman v. Wood Group Prod. Servs., Inc.*, No. 09-4142, 2010 WL 5207587, at *1 (E.D. La. Dec. 14, 2010), others have considered a co-defendant's opposition. *See Helen of Troy, L.P.*, 235 F.R.D. 634, 640 (W.D. Tex. 2006). The Court considers Permobil's opposition, and, as discussed below, finds it insufficient to defeat defendants' motions for summary judgment. Accordingly, defendants' motions to strike, R. Docs. 154, 155, 161, are denied.

I.   **BACKGROUND**

In 1989, Derrick Edwards suffered an injury to his spinal cord and he has been paralyzed from the neck down ever since.[3] In 1990, Edwards purchased his first wheelchair.[4] Edwards testified he has had four to five wheelchairs over his life.[5] In 2001, Edwards's chair broke and caused him to fall backwards.[6] Edwards did not sustain serious injuries, and he did not pursue a lawsuit.[7] Following this incident, Edwards was using the Permobil manufactured Chairman 2K (the "2001 Chair"). Edwards continued to have problems with the 2001 Chair; specifically, a bolt holding the chair upright kept slipping.[8] When Edwards had the 2001 Chair repaired, Marcel Farnet, a service technician, contacted Permobil about how to stop the bolt from sliding. At Permobil's suggestion, Farnet added a second bolt.[9]

On April 2, 2007, Edwards purchased a new wheelchair from Permobil, the C500 (the "2007 Chair").[10] Praxair Healthcare

---

[3] R. Doc. 102-2 at 10-12.

[4] *Id.* at 19.

[5] *Id.* at 23-24.

[6] *Id.* at 25.

[7] *Id.* at 27. Edwards voluntarily dismissed his lawsuit.

[8] R. Doc. 102-4 at 11-12.

[9] *Id.* at 12.

[10] R. Doc. 102-5.

Services, Inc. ("PHS"), a subsidiary of Praxair, delivered the chair to him and set up the chair.[11] Praxair performed maintenance on the 2007 Chair once on January 11, 2008[12] before it sold its wheelchair division to National Seating in 2008. From then on, National Seating repaired Edwards's chair. On July 8, 2010, Edwards suffered the injury that is at the center of this dispute. He was seated in the 2007 Chair in the back of a van, when the bolt on the chair broke and he fell backwards.[13]

Edwards alleges he suffered multiple injuries and sues multiple defendants. Among others, he sues National Seating and its insurer Columbia Casualty for negligently maintaining the 2007 Chair. Edwards also sues Praxair, the non-manufacturing seller of the 2007 Chair and Praxair's insurer, Old Republic. All four defendants move for summary judgment.

## II. STANDARD

### A. SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

---

[11] R. Doc. 94-1 at 2.

[12] R. Doc. 94-8 at 2.

[13] R. Doc. 98-2 at 31-32.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

4

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *Id.* at 325; *see also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (quoting *Celotex*, 477 U.S. at 332).

### B. DUTY-RISK ANALYSIS

Louisiana courts apply the duty-risk analysis to determine whether to impose negligence liability. *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 632-33 (La. 2006). Liability requires satisfaction of five elements:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the

>   cause-in-fact element); (4) the defendant's
>   substandard conduct was a legal cause of the
>   plaintiff's injuries (the scope of liability or
>   scope of protection element); and (5) actual
>   damages (the damages element).

*Id.* at 633.

### III. NATIONAL SEATING'S MOTION FOR SUMMARY JUDGMENT

National Seating became the maintenance and service operator for Edwards's 2007 Chair in 2008.[14] Marcel Farnet and Jerome Helbach were the National Seating employees responsible for repairing the 2007 Chair.[15] Before National Seating took over servicing Edwards's chair in 2008, Farnet and Helbach were responsible for servicing his chair when they were then employed by Praxair. Edwards alleges that National Seating was negligent because it did not exercise reasonable care when it repaired and maintained the 2007 Chair.

#### A.   NATIONAL SEATING HAD A DUTY TO EXERCISE REASONABLE CARE

As a wheelchair repairer, National Seating must exercise reasonable care under the circumstances. *Campbell v. Otis Elevator Co.*, 808 F.2d 429, 434 (5th Cir. 1987); *Rowell v. Carter Mobile Homes, Inc.*, 482 So. 2d 640, 645 (La. Ct. App. 1984) ("A repairman owes a duty of reasonable care, inspection and workmanlike performance of repairs."). National Seating insists

---

[14] R. Doc. 98 at 10; R. Doc. 98-1 at 30.

[15] R. Doc. 98-3 at 6; R. Doc. 98-5 at 3-4.

that it cannot be liable for Edwards's injuries because it did not breach its duty.

### B.   EDWARDS NEVER HAD PROBLEMS WITH HIS 2007 CHAIR

Plaintiff presents no evidence that Edwards had ever complained to National Seating that he was experiencing trouble with the looseness in the back of the 2007 Chair or the bolt securing it. In fact, Edwards testified that "had no problem with that particular bolt on this wheelchair before this accident."[16] He testified that "[t]here was no notice to [him] that something was wrong or off with [his] wheelchair before it actually fell" and that there was "nothing to indicate that there was anything wrong with the wheelchair or bolt prior to the incident."[17] While Edwards testified that "every time" he got the 2007 Chair maintained, repaired, or adjusted, he would "*always* have Marcel [Farnet] or Jerome [Helbach] check the whole chair, whether the nuts, the bolts, to make sure everything was secured,"[18] there is no evidence that Farnet or Helbach failed to correct a problem that Edwards had identified. Accordingly, there is no evidence that Edwards had a problem with his chair before the accident, no evidence that he informed the repairmen of any problem, and no evidence that National Seating failed to exercise due care to

---

[16] R. Doc. 102-2 at 52.

[17] *Id.*

[18] *Id.* at 52-53 (emphasis added).

repair his wheelchair. A general request to "check the whole chair" is too vague to trigger a breach of due care. Plaintiff's claims against National Seating, therefore, fail.

### IV. PRAXAIR'S MOTION FOR SUMMARY JUDGMENT

Praxair Healthcare Services, Inc., a subsidiary of Praxair, delivered the 2007 Chair to Edwards. Farnet and Helbach worked for PHS at the time, and they set up the 2007 Chair for Edwards.[19] Farnet set up the chair and gave Edwards instructions on how to use it.[20] After the initial set up in June 2007, PHS performed minor repair work once on the 2007 Chair in January 2008.[21] In early 2008, Praxair sold its wheelchair division to National Seating.[22] As discussed above, Farnet and Helbach continued to service Edwards's chair while working for National Seating.[23] Praxair now moves for summary judgment, and argues that it cannot be liable as a non-manufacturer seller or repairer of Edwards's chair.[24]

---

[19] R. Doc. 94-4 at 7, 12.

[20] *Id.* at 12.

[21] R. Doc. 94-8.

[22] R. Doc. 94-6 at 3.

[23] *Id.*

[24] R. Doc. 94-1.

### A.  PRAXAIR MAY NOT BE LIABLE AS A NON-MANUFACTURER SELLER FOR FAILING TO WARN EDWARDS OF THE DEFECTIVE BOLT

A non-manufacturer seller, such as Praxair, may be liable for negligence only "for its negligent failure to warn consumers of the dangerous propensities of the product it sells." *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Hopper v. Crown*, 555 So. 2d 46, 48 (La. Ct. App. 1989). For example, Praxair may be held liable if it "knew or should have known that the product was defective, and [it] failed to declare it." *Id.* at 1414 (citing *Home Ins. Co. v. Nat'l Tea Co.*, 577 So. 2d 65, 74 (La. Ct. App. 1990)); *Jackson v. Sears Authorized Retail Dealer Store*, 821 So. 2d 590, 593 (La Ct. App. 2002).

Praxair maintains that it may not be held liable for failing to disclose the defective bolt to Edwards because it had no control over the type of bolt that was used in the 2007 Chair. On this point, Praxair's argument is strong; Permobil, not Praxair, controlled these aspects of the 2007 Chair. Praxair further maintains that Farnet's and Helbach's experience with the 2001 Chair is irrelevant to Praxair's obligation to warn him of a defect with the bolt in the 2007 Chair because the 2001 Chair was "a completely different model wheelchair."[25]

Plaintiff seeks to impose a duty to warn on a non-manufacturer seller, not based on experience with the product

---

[25] *Id.* at 6.

sold, but based on experience with a different product manufactured years earlier that was facially similar to the later model. Plaintiff cites no authority suggesting that a non-manufacturer seller must (1) check a new model against a manufacturer's similar models made years earlier for identities in engineering, design, and manufacturing materials, (2) assume that any defects from an old model have gone unfixed, and (3) warn consumers about potential defects in the new models. Here, the two models were bought years apart; plaintiff's theory asks Praxair to do what the law does not require. *See Haley v. Wellington Specialty Ins. Co.*, 4 So. 3d 307, 314-15 (La. Ct. App. 2009) (affirming summary judgment because defendant, as a non-manufacturer seller, had no duty to warn of a defect that it did not know about); *Jackson*, 821 So. 2d at 591-94 (affirming summary judgment when there was no evidence that non-manufacturing seller of defective chair knew or should have known of the potential design defect, and evidence suggested that the defendant had sold more than two dozen of the same chairs without incident).

    Like *Jackson* and *Haley*, there is no evidence suggesting that Praxair knew or should have known about any defect in the 2007 Chair. All plaintiff has presented is a theory of liability that imposes a duty of inspection and inquiry not required by existing law. *See Jackson*, 821 So. 2d at 593 ("Nor is a non-manufacturing seller required to inspect the product prior to sale to determine

the possibility of inherent vices or defects."). Faced with this evidence, a jury could not find that Praxair was actually or constructively aware of a defect in the 2007 Chair and failed to warn Edwards. Accordingly, plaintiff's failure to warn claim against Praxair fails as a matter of law.

### B. PRAXAIR MAY NOT BE LIABLE AS A MAINTENANCE AND SERVICE CONTRACTOR

Helbach and Farnet worked for Praxair when they assembled the 2007 Chair and performed maintenance on the 2007 Chair only once on January 11, 2008-over two years before the accident.[26] As with National Seating, Edwards did not ask Praxair to check any looseness in the back of the 2007 Chair or the bolt securing it. Edwards testified that he "had no problem with that particular bolt on this wheelchair before this accident."[27] As noted earlier, he testified that "[t]here was no notice to [him] that something was wrong or off with [his] wheelchair before it actually fell" and that there was "nothing to indicate that there was anything wrong with the wheelchair or bolt prior to the incident."[28] *See supra* Part III.[29] Because there is no evidence

---

[26] R. Doc. 94-8 at 2.

[27] R. Doc. 102-2 at 52.

[28] *Id.*

[29] Praxair argues that Edwards did not assert a claim against Praxair based on Praxair's negliglently maintaining the 2007 Chair in his complaint. R. Doc. 132 at 8. Praxair is wrong. *See* R. Doc. 40 at 3-4 ("To the extent that the bolt was not

that Praxair failed to reasonably repair the 2007 Chair, this claim is also dismissed.

## V. CONCLUSION

For the reasons stated above, defendants' motions are GRANTED.

New Orleans, Louisiana, this 13th day of August, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

properly maintained, PRAXAIR and NATIONAL SEATING are responsible to EDWARDS for damages resulting from an improperly maintained bolt on the wheelchair.").